IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

STANLEY WANLASS, an individual; and )
RENAISSANCE INTERNATIONAL, )
INC., an Oregon corporation, )
         )
         Plaintiffs, )     Civil Case No. 05-1688-KI
         )
     vs. )     OPINION AND ORDER
         )
SHAWN D. OLFMAN, an individual; )
JERRY A. OLFMAN, an individual; CLE )
OWNERS, INC., a foreign corporation; )
OLFMAN BROTHERS, a foreign )
partnership; OLFMAN BROTHERS, INC., )
a foreign corporation; and S & J OLFMAN, )
a foreign partnership, )
         )
         Defendants. )

     Leonard D. DuBoff
     Christopher W. Brown
     The DuBoff Law Group, LLC
     6665 S.W. Hampton Street, Suite 200
     Portland, Oregon  97223-8357

        Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

Jerry Alan Olfman
70 Polson Avenue
Winnipeg MB R2W 0M2
CANADA

Shawn David Olfman
346 Matheson Avenue
Winnipeg MB R2W 0C8
CANADA

   Pro Se Defendants

KING, Judge:

The issues between plaintiffs and defendants date back to a 1986 agreement for the design of limited edition playing pieces for a game. This is the third court action between the two groups, spanning two countries. Here, plaintiffs' claim for breach of contract alleges that defendants breached their implied duty to use best efforts to market and sell the game by failing to make any effort to do so between 1988 and the present. Before the court are Plaintiffs' Motion for Summary Judgment (#54), Plaintiffs' Request for Judicial Notice (#57), Jerry and Shawn Olfman's Motions for Summary Judgment (#111 and #113), and Jerry and Shawn Olfman's Request for Judicial Notice (#142).

## FACTS

Stanley Wanlass is a semi-retired artist now living in Utah. On December 15, 1986, Stanley Wanlass and Shawn Olfman, who signed only on behalf of Olfman Brothers partnership, executed a contract at Astoria, Oregon for Wanlass to design the playing pieces for the Olfmans' game of Capture Limited Edition ("CLE"). Shawn Olfman traveled to Oregon for the purpose of executing this agreement. Jerry Olfman has never been to Oregon.

Page 2 - OPINION AND ORDER

The 1986 agreement was amended to add plaintiff Renaissance International, Inc. ("RII"), Wanlass's Oregon corporation, as the party to receive payment instead of Wanlass. Wanlass signed the amendment on September 9, 1988 in Utah. Wanlass signed for himself individually and as president of RII. Jerry Olfman signed for S&J Olfman on September 14, 1988 in Winnipeg, Manitoba, Canada.

Shawn Olfman explains that the Olfman Brothers partnership changed its name in 1988 to S&J Olfman. Olfman Brothers, Inc. and CLE Owners, Inc. are parties to neither the 1986 nor the 1988 contracts.

According to Wanlass, he designed the game pieces and game board in Oregon. The Olfmans approved his designs in the spring or summer of 1988. The wax sculptures which would be used to make the molds for the bronze master copies were designed and created almost exclusively in Oregon, although some finishing work was done in Utah after Wanlass moved.

According to Shawn Olfman, while Wanlass still lived in Oregon, he only made a few sketches for possible playing piece designs and sketched a few minor additional designs that could be attached to the game board. Shawn Olfman believes that Wanlass's design involvement occurred almost entirely during June and July 1988, in Utah, after the Olfmans visited him there in June 1988 to view his progress.

All CLE marketing done by defendants was performed from Canada and aimed at art markets in New York, California, Japan, Texas, and Illinois.

On January 14, 2002, Shawn Olfman sent a letter to Wanlass and RII with the subject of "Amendment to Contract, Between: S&J Olfman, and Stanley Glen Wanlass, and Renaissance International Inc., made and entered into on or about the 14th of September, 1988." Shawn

Olfman Decl. Ex. 1 at 1. The letter invoked the 1988 contract's transfer provisions and transferred all contractual obligations or benefits of S&J Olfman to CLE Owners, Inc. and Olfman Brothers Incorporated.[1]

On April 17, 2002, plaintiffs filed <u>Wanlass v. Olfman</u>, Civ. No. 02-501-KI (D. Or. 2002) ("2002 Oregon Action"). The parties are identical to the parties in the case before me. According to plaintiffs' counsel in that action and this one, Leonard DuBoff, none of the defendants served written notice on plaintiffs of an intent to appear in the 2002 Oregon Action.

On May 9, 2002, DuBoff wrote Shawn Olfman, stating, "[Y]our responsive pleading is due within 20 days of the date of that service [May 5, 2002], and unless your response is timely filed, we shall move the court for a default judgment." DuBoff Decl. Ex. 1 at 1. The letter also suggested discussing settlement.

On May 21, 2002, the Olfmans and their companies filed a statement of claim in Manitoba against Wanlass and RII, seeking a declaration of their rights under the contract. <u>CLE Owners, Inc. v. Wanlass</u>, 182 Man. R.2d 94 (2004) ("Canada Action").

A few letters were exchanged between Shawn Olfman and DuBoff exploring settlement. On May 24, 2002, DuBoff proposed terms and stated, "Please let me know whether you are willing to agree to the above so that we can put this matter to rest once and for all and avoid the necessity of having you, your brother and the related business involved in further legal proceedings." Shawn Olfman Decl. Ex. 12. Shawn Olfman understood this statement to mean that all legal action was on hold during the settlement discussions. Shawn Olfman also states

---

[1] I do not fully understand how the rights were split between the corporations but there is no reason to resolve it now.

that DuBoff advised him in a subsequent phone conversation that all legal actions were on hold during the settlement discussions.

DuBoff states that he never suggested in his phone calls to Shawn Olfman that his clients agreed to put all legal actions on hold. He did follow his typical practice and asked Shawn Olfman to agree not to seek default against Wanlass in the Canada Action without giving prior notice.

On June 11, 2002, in response to a request from an associate of DuBoff seeking an extension of time for Wanlass to file an Answer in the Canada Action, Shawn Olfman faxed the associate a copy of a May 29, 2002 letter from DuBoff concerning the settlement proposals. Shawn Olfman wrote on the letter, "I hope this letter satisfies you that settlement seems possible and other action is on hold." Shawn Olfman Decl. Ex. 15. There is no confirmation from Wanlass's attorneys that an extension of time to file an Answer in the 2002 Oregon Action was ever granted.

On June 25, 2002, plaintiffs moved for an order of default in the 2002 Oregon Action, which was entered on June 27, 2002. On July 19, 2002, plaintiffs moved for a judgment of default, which was entered on July 23, 2002. The Olfmans became aware of the default judgment in October 2002, during litigation of the Canada Action, but did not move to have it set aside. The default judgment states, in part:

> A. Plaintiffs have no liability for conversion, breach of contract, or other liability stemming from their 1986 and 1988 agreement with Defendants;

> B. Plaintiff Wanlass is the sole owner of moral rights in the designs and sculptures relating to CLE game sets under the Visual Artists Rights Act of 1990, 17 U.S.C. 101 et. seq.;

Page 5 - OPINION AND ORDER

C.  Defendants, and each of them, are in breach of their contract with Plaintiffs by virtue of their nonperformance of the 1986/1988 contract, which granted Defendants the exclusive right to produce, license, and sell CLE games and game parts;

D.  Defendants breached the implied covenant of good faith and fair dealing by the grantor of intellectual property rights; and

E.  Judgement [sic] is entered in favor of Plaintiffs and against Defendants for costs and expenses in the amount of $591.51;

F.  Judgment is entered in favor [of] Plaintiffs for attorneys fees in the amount of $7,617.00.

Shawn Olfman states that in September 2002 discussions, DuBoff continued to tell him that if the parties settled it would resolve all pending law suits and prevent the Olfmans from having to be further involved in law suits.  The settlement agreement proposed by DuBoff on September 30, 2002, states that each party agrees to file motions for dismissal with prejudice, of any and all lawsuits against the other party currently pending in the United States or Canada. Shawn Olfman assumed from this that the 2002 Oregon Action was still pending.

In the Canada Action, the court struck the Olfmans' claim, after concluding that res judicata, based on the 2002 Oregon Action default judgment, would not work an injustice. Canada Action, 192 Man. R.2d 140 (2005).  The final action of the Canada Supreme Court, with Wanlass prevailing, occurred on September 22, 2005.  Wanlass filed the action before me on November 7, 2005.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains an issue of fact to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

evidence is viewed in the light most favorable to the nonmoving party.  Universal Health

Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.    Venue

Both sides seek summary judgment on the question of whether venue is correct in this

court.

The venue statute states:

> (a)  A civil action wherein jurisdiction is founded only on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1) a
> judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in which any defendant is
> subject to personal jurisdiction at the time the action is commenced, if there is no
> district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Plaintiffs seek damages for defendants' breach of the contract in which Wanlass designed

the playing pieces for the CLE game in exchange for a percentage of the gross retail sales.

Wanlass lived in Oregon at the time the contract was executed.  The Olfmans live in Manitoba,

Canada.

Page 7 - OPINION AND ORDER

Plaintiffs argue that the execution of the 1986 contract took place in Oregon and the game pieces were expected to be created in Oregon. Thus, plaintiffs contend that a substantial part of the events giving rise to the claim occurred here.

Defendants contend that the Olfmans lived in Canada when the contract was negotiated and that their breach allegedly took place in Canada. They also argue that because almost all of the design, physical production, and marketing of the game occurred outside of Oregon, much of the evidence and witnesses are in Canada.

Although they do not brief the argument fully, defendants are essentially arguing factors considered under the doctrine of forum non conveniens. It appears that enough of the conduct took place in Oregon that venue is proper here. I remind the parties that venue might be proper in more than one place. Plaintiffs are entitled to choose their forum. I grant summary judgment in favor of plaintiffs[2] and hold that venue is proper in Oregon.

II.    <u>Subject Matter Jurisdiction</u>

Both sides seek summary judgment on whether this court has subject matter jurisdiction over the case. Plaintiffs allege diversity jurisdiction. They seek over $2 million in damages, calculated based on the commission that would have been due for the estimated sales at the expected price.

Plaintiffs do not dispute that complete diversity of citizenship exists. Instead, they contend that the $75,000 amount in controversy is not met because there are defenses to the claim, including claim preclusion and judicial estoppel.

_____

[2] The Olfmans filed cross motions for summary judgment that raise these same issues. My rulings on their motions are consistent with my analysis stated in this opinion.

Page 8 - OPINION AND ORDER

The amount in controversy is determined from the face of the pleadings. "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000) (internal quotation omitted). Plaintiffs' allegations easily meet the amount in controversy required for diversity jurisdiction. The possible defenses are not relevant. I grant summary judgment in favor of plaintiffs and hold that diversity subject matter jurisdiction exists.

III.    Personal Jurisdiction

Both sides seek summary judgment on the issue of personal jurisdiction over each defendant.

Plaintiffs contend that the 1986 contract was entered into and signed in Oregon when Shawn Olfman traveled here, that Wanlass performed much of the design work in Oregon, and that the 1988 contract anticipated paying plaintiffs in Oregon and ratified Wanlass's previous work in Oregon.

Defendants contend that their contacts with the United States were minor and sporadic. They note that they are citizens of Canada, that Jerry Olfman has never been to Oregon, that Shawn Olfman only came to Oregon once to execute the 1986 contract, and that the vast majority of the work they performed under the contract was in Canada. Defendants also note that they negotiated and executed the 1988 contract in Canada. They contend that the phone calls and letters to the United States are insufficient to establish general jurisdiction. Defendants argue that it is unreasonable to require them to travel thousands of miles to defend themselves in an unfamiliar foreign legal system.

The Olfmans also contend that any contacts they had with the United States were in their capacities as partners of the S&J Olfman partnership.  Defendants argue that CLE Owners, Inc. and Olfman Brothers, Inc. were parties to neither the 1986 nor the 1988 contract and have no contacts with Oregon.  Plaintiffs point to the January 14, 2002 letter indicating that all duties and benefits of the Olfmans were transferred to CLE Owners, Inc. and Olfman Brothers, Inc.

I will first address the relationships between the parties.  Regardless of any possible joint liability, jurisdiction over each defendant must be established individually.  The contacts of the partners, however, may establish jurisdiction over the partnership because each partner acts as an agent of the partnership when carrying on the business of the partnership.  A partner's actions are thus imputed to the partnership for jurisdictional purposes but are not imputed to the other partners.  Sher v. Johnson, 911 F.2d 1357, 1365-66 (9th Cir. 1990); ORS 67.090(1) (each partner is an agent of the partnership); ORS 67.100(1) (partnership is liable for the conduct of a partner acting in the ordinary course of business of the partnership); ORS 67.105(1) (all partners are liable jointly and severally for all obligations of the partnership).  On the other hand, a corporate officer who has contact with a forum only in regard to the performance of his official duties is not subject to personal jurisdiction in that forum.  Kransco Mfg., Inc. v. Markwitz, 656 F.2d 1376, 1379 (9th Cir. 1981); ORS 60.377(4) (corporate officer not personally liable for action taken in the performance of his duties).

Accordingly, the conduct of Shawn Olfman and Jerry Olfman cannot be the basis for this court's personal jurisdiction over the other partner, even though the assets of both individuals could be reached.  The action of either can be imputed to the partnerships for purposes of a

Page 10 - OPINION AND ORDER

personal jurisdiction analysis.  The actions of either acting as a corporate officer can be the basis of personal jurisdiction over the corporation but not over the individual.

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements, 328 F.3d 1122, 1129 (9th Cir. 2003).  If no evidentiary hearing is held, a plaintiff can withstand a motion to dismiss by making a prima facie showing of jurisdictional facts which, if true, support jurisdiction over the defendant.  Allegations in the complaint must be taken as true and conflicts between the facts must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  Id.

The jurisdictional reach of the federal court over defendants in a diversity action is determined by the law of the forum state.  Oregon extends jurisdiction to the outer limits permitted by the state or federal constitutions.  ORCP 4L.  Thus, I can turn to a federal due process analysis.  Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 863 (9th Cir. 2003).  Plaintiffs rely heavily on Oregon's long-arm statute and its provisions for contracts to be performed in this state.  Reliance on the subparts of the long-arm statute is not adequate, however, the due process analysis must be performed.  See Gray v. Firstenberg, 913 F.2d 758, 760 n.1 (9th Cir. 1990) (reliance on long-arm statute is inadequate because the courts, and not the legislature, must decide whether due process requirements are met in a particular case).

Federal due process requires that a nonresident defendant has minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The constitutional due process test may be satisfied by a finding of either general or

specific jurisdiction. When a defendant has "substantial" or "continuous and systematic"

contacts with the forum state, general jurisdiction is proper even if the cause of action is

unrelated to the defendant's forum activities. Bancroft & Masters, Inc. v. Augusta National, Inc.,

223 F.3d 1082, 1086 (9th Cir. 2000). The standard is "fairly high" and requires contacts that

approximate physical presence. Id.

Plaintiffs do not contend that general jurisdiction exists over defendants.

When general jurisdiction is inappropriate, the Ninth Circuit has recognized application

of a three-part test to determine whether specific jurisdiction exists:

> (1) the defendant has performed some act or consummated some transaction
> within the forum or otherwise purposefully availed himself of the privileges of
> conducting activities in the forum, (2) the claim arises out of or results from the
> defendants' forum-related activities, and (3) the exercise of jurisdiction is
> reasonable.

Mattel, 354 F.3d at 863.

The plaintiff has the burden of satisfying the first two prongs of the test or personal

jurisdiction is not established in the forum state. If the plaintiff is successful, the burden shifts to

the defendant to present a compelling case that the exercise of jurisdiction would not be

reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The first element ensures that a "defendant's conduct and connection with the forum

State are such that he should reasonably anticipate being haled into court there." World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559 (1980).

> We often use the phrase "purposeful availment," in shorthand fashion, to include
> both purposeful availment and purposeful direction, but availment and direction
> are, in fact, two distinct concepts. A purposeful availment analysis is most often
> used in suits sounding in contract. A purposeful direction analysis, on the other
> hand, is most often used in suits sounding in tort.

A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  By taking such actions, a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  In return for these benefits and protections, a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum.

A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.

Schwarzenegger, 374 F.3d at 802-03 (9th Cir. 2004) (internal quotation and citation omitted).

The Ninth Circuit uses a "but for" test to determine whether a particular claim arises out of forum-related activities.  Mattel, 354 F.3d at 864 (but for defendant's contacts with the forum, would plaintiff's claims against defendant have arisen?).  The focus is a broad one, analyzing whether the entire course of events was made possible by defendant's contacts in the forum state.

Shawn Olfman negotiated the contract with Wanlass and traveled to Oregon in 1986 to execute the contract.  When the 1986 contract was executed, Olfman expected Wanlass to perform the design work in Oregon and expected to pay Wanlass in Oregon.  Wanlass's move to Utah came about well after the fact.  I also do not believe the 1988 contract "wiped out" any contacts that had already occurred.  I conclude that Shawn Olfman has purposely availed himself of the privilege of conducting business in Oregon.  Wanlass's claim also arises out of Shawn Olfman's contacts with Oregon which resulted in the 1986 agreement.

Shawn Olfman's contacts are imputed to his partnership at the time, Olfman Brothers.  Because S&J Olfman is only a new name for Olfman Brothers, and not a separate partnership, as explained by Shawn Olfman, Shawn Olfman's contacts are also imputed to S&J Olfman.  Shawn

Page 13 - OPINION AND ORDER

Olfman's contacts are not imputed to Jerry Olfman.  There is no evidence that Jerry Olfman was involved in the contract negotiations and was not in Oregon for the execution of the 1986 contract.  I conclude that Jerry Olfman did not avail himself of the privilege of conducting business in Oregon.

That leaves the two corporations, Olfman Brothers, Inc. and CLE Owners, Inc.  There is nothing in the record on the interaction between these corporations and S&J Olfman except the January 14, 2002 letter in which the contractual rights and obligations were transferred from the partnership to the corporations.  I conclude that this supports a prima facie case that the court has personal jurisdiction over the corporations based on their assumption of the contractual obligations.

Seven factors are relevant to the determination of the reasonableness of the exercise of jurisdiction:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant of defending in the forum; 3) the extent of conflict with the sovereignty of the defendants' state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

Mattel, 354 F.3d at 866-67.  No factor is dispositive; the court must balance all seven.  The burden is on the party seeking to defeat personal jurisdiction to present a "compelling case" that jurisdiction would be unreasonable.  Id. at 866.

Defendants primarily contend that it is unreasonable to require them to travel thousands of miles to defend a case in another country's judicial system.

Looking at the factors, defendants' interjection into Oregon's affairs was adequate to support personal jurisdiction, but not extreme, because their part of the performance was to be in Canada.  I do not have information on the size of the company but doubt that it is a large one. Thus, defendants are burdened by having to defend in another country.  Oregon has some interest in adjudicating this dispute, but the interest lessened once Wanlass moved to Utah.  The 2002 default judgment was entered in this court, likely leading to judicial efficiencies if the current action remains here.  Finally, I know of no alternative forum because the court in Canada is done with the dispute.

After weighing these factors, defendants have not presented a compelling case that jurisdiction would be unreasonable.

In summary, plaintiffs have established a prima facie case that this court has personal jurisdiction over all defendants except Jerry Olfman.

IV.   2002 Default Judgment

In the Third Affirmative Defense, defendants contend that the default judgment obtained in the 2002 Oregon Action should be set aside for lack of personal jurisdiction, lack of notification of the motion for entry of default, and the existence of defenses in the 2002 Oregon Action under the statute of limitations, statute of ultimate repose, and laches.  Defendants contend that their participation in settlement negotiations is a sufficient appearance to trigger the notice requirement in Federal Rule of Civil Procedure 55(b)(2).  Alternatively, defendants argue that their filing of the Canada Action constitutes an appearance for purposes of the 2002 Oregon Action.  Further, defendants contend that the default judgment was obtained through false statements and deceit, including Wanlass's Affidavit stating that Jerry Olfman signed the 1988

Page 15 - OPINION AND ORDER

contract in Utah and plaintiffs' failure to inform this court of the Canada Action and the parties'

agreement that all litigation was on hold pending the resolution of settlement negotiations.

Plaintiffs seek summary judgment dismissing the Third Affirmative Defense. Plaintiffs

contend that under the Federal Rules of Civil Procedure, they had no obligation to serve the

motion for default on the defendants because defendants had not appeared. Plaintiffs also argue

that Oregon Rule of Civil Procedure 69A(1), with its requirement of giving 10 day written notice

before moving for default if the party has filed an appearance or provided written notice of intent

to file an appearance, does not apply to this federal action. If I find that it should be followed due

to local practice, plaintiffs argue that defendants did not provide written notice of intent to file an

appearance. Plaintiffs note DuBoff's letter of May 9, 2002 indicating plaintiffs' intent to seek

default if a response was not timely filed. Plaintiffs also contend that they had no duty to inform

this court of the Canada Action or the ongoing settlement negotiations. Finally, plaintiffs

contend that defendants waived the defenses listed in the affirmative defense by failing to appear.

Although the motions before me concern the affirmative defense, the underlying issue is

whether I should set aside a default judgment under Federal Rule of Civil Procedure 60.

The court's discretion to set aside a judgment is limited by three policy considerations:

(1) Rule 60(b) is remedial in nature and must be applied liberally; (2) default judgments are

generally disfavored and cases should be decided on the merits if possible; and (3) if the

defendant seeks timely relief from the judgment and has a meritorious defense, any doubt should

be resolved in favor of the defendant. In re Roxford Foods, Inc.,12 F.3d 875, 879 (9th Cir.

1993). The court has the discretion to deny a Rule 60(b) motion to set aside a default judgment

if: (1) the plaintiff would be prejudiced if the judgment is set aside; (2) the defendant has no

meritorious defense; or (3) the defendant's culpable conduct led to the default.  In re Hammer, 940 F.2d 524, 526 (9th Cir. 1991).

I first note that, based on the analysis above, the court did not have personal jurisdiction over Jerry Olfman when the default judgment was entered.

I will now address the fraud and deceit argument.  Shawn Olfman attaches Exhibit 2 to his declaration which he says is an affidavit Wanlass swore to in California on April 11, 2003. The exhibit is not the entire affidavit but, at best, is two inside pages of an affidavit which state that Jerry Olfman signed the 1988 contract in Utah and was accompanied by Shawn Olfman. Due to the partial submission, the exhibit is not properly authenticated and I cannot determine if it is an actual affidavit.  I also have no idea where it was ever filed or used.  It was not filed in either action in this court as far as I am aware.  Thus, I give no credence to it.

Defendants also complain that plaintiffs were deceitful by failing to inform this court of the Canada Action and the parties' agreement that all litigation was on hold pending the resolution of settlement negotiations.  First, I accept that Shawn Olfman thought there was an agreement to put the litigation on hold but I see no evidence of an agreement.  Moreover, the statement on which Shawn Olfman relies is a thin reed, indeed.  I also know of no obligation under the rules or case law that the court be informed of other pending litigation when a party moves for default.  Consequently, I am not persuaded by the fraud and deceit argument.

Rule 60(b) requires a motion for relief from judgment to be filed "within a reasonable time," and not more than one year after judgment was entered for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud.  Defendants became aware of the default judgment in October 2002 but did not move to set it aside.  Their answer raising the affirmative

Page 17 - OPINION AND ORDER

defense was not filed in this action until February 2006. I am not persuaded by defendants' contention, made without citation to legal authority, that the time to challenge the default judgment should be tolled during the pendency of the Canada Action.

The lack of notice argument is a closer call. I agree with plaintiffs that the Oregon procedural rule does not apply, although I believe it is a good guideline for professional practice. The question, then, is whether the settlement discussions are a sufficient appearance to trigger the federal notification requirement. Federal Rule of Civil Procedure 55(b)(2) states: "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." "The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit." Roxford, 12 F.3d at 879.

DuBoff's May 9, 2002 letter, stating that he would move for a default judgment if a timely response is not filed, is not adequate notice under Rule 55. The rule requires notice of the application for judgment. I interpret that to mean notice of an actual motion that was filed or is about to be filed. The letter is too general and disconnected from an actual motion to provide adequate notice that a defendant needs to file a response immediately.

Plaintiffs rely on Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508 (9th Cir. 1986), in which the court held that a settlement in which only the first installment payment was made did not require notice before entry of default. The case is not helpful here, however, because I am considering setting aside a *judgment* of default and not just an entry of an order of default.

Page 18 - OPINION AND ORDER

As the court noted, Rule 55 only requires notice before entry of a default *judgment*.  <u>Id.</u> at 512 n.2

Defendants cite several cases in which informal contacts were sufficient appearances to trigger the notice requirement.  <u>See</u> <u>Roxford</u>, 12 F.3d 875 (formal appearance in bankruptcy action sufficient to trigger notice requirement in related adversary proceeding for a declaratory judgment); <u>H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,</u> 432 F.2d 689 (D.C. Cir. 1970 (letters exchanged exploring resolution triggered notice requirement because there was no doubt the suit would be contested if settlement did not occur); <u>CSB Corp. v. Cadillac Creative Advertising, Inc.,</u> 136 F.R.D. 34 (D.R.I. 1990) (ongoing settlement negotiations sufficient to trigger notice requirement);  The opposite result was reached in <u>Wilson v. Moore and Associates, Inc.,</u> 564 F.2d 366 (9th Cir. 1977), in which the district court concluded that two letters sent by defendant explaining its conduct, which caused plaintiff's counsel to respond both times that defendant should get an attorney and timely respond to avoid a default, did not trigger the notice requirement.  Settlement was not explored at all and defendant received two general warnings that default would be sought, even though notice of an actual application for default was not given.  <u>Id.</u> at 369.

Here, plaintiffs' papers seeking an order of default and a default judgment in the 2002 Oregon Action make no mention of settlement discussions or even of any contact between the parties.  In fact, the Application for Default Judgment by Court (#13) states that defendants "failed to appear, answer or respond to such summons and complaint."  I agree that there was no formal appearance or answer but the settlement discussions are an informal response.  I conclude that the settlement discussions were sufficient to trigger the notice requirement in Rule 55(b)(2).  Although I am troubled by defendants' delay in seeking relief from default, I find that the Canada

Action excuses the tardiness.  I am unaware of any prejudice to plaintiffs except that they must

now prove their case.  In light of the preference of the judicial system to decide cases on the

merits, I will set aside the order of default and default judgment in the 2002 Oregon Action.

I make no finding on the validity of the possible defenses other than that there appear to

be possible defenses to plaintiffs' claim seeking over $2 million.

V.    Claim Preclusion

In the Fourth Affirmative Defense, defendants contend that plaintiffs are barred by res

judicata, issue and claim preclusion, estoppel, and/or laches from asserting a claim or seeking a

remedy that was not sought in the 2002 Oregon Action.  Plaintiffs seek summary judgment

dismissing the Fourth Affirmative Defense.

Claim and issue preclusion require a final judgment on the merits or that an issue was

actually litigated and necessarily decided.  Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir.

1988); Shaw v. Hahn, 56 F.3d 1128, 1131 (9th Cir.), cert. denied, 116 S. Ct. 418 (1995).  With

the default judgment set aside, these doctrines, along with the traditionally named res judicata,

have no application here.  I grant summary judgment striking the affirmative defense on these

three grounds.

The parties have not briefed the affirmative defenses of laches or estoppel.  Consequently,

I do not strike those defenses.

Defendants argue that the current claims for money damages are barred by the doctrine of

judicial estoppel because damages were not sought in the 2002 Oregon Action.

Judicial estoppel is an equitable doctrine invoked in the discretion of the court that

protects the integrity of the judicial process by "prohibiting parties from deliberately changing

positions according to the exigencies of the moment." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50, 121 S. Ct. 1808 (2001) (internal quotation omitted). The court should consider several factors in determining application of the doctrine: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must succeed in persuading a court to accept the earlier position; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." <u>Id.</u> at 750-51. The factors are neither inflexible prerequisites nor an exhaustive formula. <u>Id.</u> at 751.

Claim preclusion problems aside, seeking damages now is not clearly inconsistent with the declaratory judgment sought in 2002. I grant summary judgment and dismiss the affirmative defense of judicial estoppel.

VI.    <u>Performance Excused by Plaintiffs' Conduct</u>

In the Ninth Affirmative Defense, defendants contend that their performance under the 1988 contract was excused by reason of plaintiffs' prior breach and/or non-performance, including but not limited to plaintiffs' failure to provide customer lists as required by paragraph 22 of the 1988 agreement.

Plaintiffs seek summary judgment dismissing the Ninth Affirmative Defense. Plaintiffs rely on issue preclusion based on the default judgment's declaration that plaintiffs have no liability for breach of contract. Because I have vacated the default judgment, I deny plaintiffs' motion for summary judgment against the Ninth Affirmative Defense.

Page 21 - OPINION AND ORDER

VII.    <u>Proper Parties</u>

      Defendants raise the issue of whether the Olfmans are proper defendants in light of the

transfer of their rights to Olfman Brothers, Inc. and CLE Owners, Inc.  I am not able to fully

understand the issue based on the current briefing and evidentiary record.  Consequently, I

decline to rule on it in a summary judgment motion.  The issue may be raised at trial.

## CONCLUSION

      Plaintiffs' Request for Judicial Notice (#57) and Jerry and Shawn Olfman's Request for

Judicial Notice (#142) are granted.  Plaintiffs' Motion for Summary Judgment (#54) and Jerry

and Shawn Olfman's Motions for Summary Judgment (#111 and #113) are granted in part and

denied in part.  I will hold a status conference in the near future.

      IT IS SO ORDERED.

      Dated this    20th    day of February, 2007.


                        /s/ Garr M. King
                       Garr M. King
                       United States District Judge